MILLICENT N. SANCHEZ (State Bar No. 108613)
Email: msanchez@swerdlowlaw.com
LORI M. YANKELEVITS (State Bar No. 156253)
Email: lyankelevits@swerdlowlaw.com
**SWERDLOW FLORENCE**
**SANCHEZ SWERDLOW & WIMMER**
A Law Corporation
10877 Wilshire Blvd., Suite 1650
Los Angeles, California 90024
Telephone: (310) 288-3980
Facsimile: (310) 733-1727

Attorneys for Defendant, Badger Meter, Inc.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

RONALD WAYNE TOTEN,

Plaintiff,

vs.

HADRONEX, INC. d/b/a SMARTCOVER SYSTEMS; BADGER METER, INC.; and DOES 1 through 10, Inclusive,

Defendants.

Case No. 2:26-cv-09280

**DECLARATION OF LORI M. YANKELEVITS IN SUPPORT OF DEFENDANT BADGER METER, INC.'S NOTICE OF REMOVAL**

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**DECLARATION OF LORI M. YANKELEVITS**

I, Lori M. Yankelevits, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am an associate at Swerdlow Florence Sanchez Swerdlow & Wimmer, A Law Corporation, and I am counsel of record for Defendant, Badger Meter, Inc. ("Badger Meter"). I am duly licensed to practice law in the State of California and before the United States District Court for the Central District of California. All of the information contained herein is based on my personal knowledge unless otherwise indicated, and, if called as a witness, I could and would competently testify thereto.

2. According to the State-Court docket in this matter, on June 30, 2026, Plaintiff, Ronald Wayne Toten ("Plaintiff"), filed his Complaint in this case in the Los Angeles Superior Court, entitled <u>Ronald Wayne Toten, Plaintiff, vs. Hadronex, Inc. d/b/a Smartcover Systems; Badger Meter, Inc.; and Does 1 through 10, Inclusive, Defendants</u>, Case No. 26STCV20825 (hereinafter, the "Complaint"). A true and correct copy of the Complaint (together with the Summons, Civil Case Cover Sheet, Notice of Case Assignment, and Alternative Dispute Resolution Packet, ) is attached as Exhibit A.

3. On July 22, 2026, Badger Meter, through its agent for service of process, received the documents contained in Exhibit A. A true and correct copy of the Service of Process Receipt is attached hereto as Exhibit B.

4. On August 19, 2026, Defendant filed its Answer with Affirmative Defenses. A a true and correct copy of the Answer with Proof of Service is attached hereto as Exhibit C.

5. I am not aware of any other further proceedings or filings regarding this case in the Los Angeles Superior Court.

6. Following the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be filed with the Clerk of the State Court.

I declare under penalty of perjury under the laws of the State of California and the

United States of America that the foregoing is true and correct.

Executed on this 20th day of August, 2026, at Los Angeles, California.

Lori M. Yankelevits

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

Electronically FILED by Superior Court of California, County of Los Angeles 6/30/2026 4:29 PM David W. Slayton, Executive Officer/Clerk of Court, By D. Williams, Deputy Clerk

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
HADRONEX, INC. d/b/a SMARTCOVER SYSTEMS; BADGER METER, INC.; and DOES 1 through 10, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
RONALD WAYNE TOTEN

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse, Central District
111 North Hill Street
Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
26STCV20825

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Peter A. Javanmardi, Esq. | Marc A. Holmquist, Esq. 424.286.4240
Javanmardi Law, PC | Holmquist Law, PC
1875 Century Park East, Suite 2250, Los Angeles, CA 90067

DATE: *(Fecha)* June 30, 2026 06/30/2026 Clerk, by *(Secretario)* David W. Slayton, Executive Officer/Clerk of Court D. Williams , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Badger Meter, Inc.

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*





American LegalNet, Inc.
www.FormsWorkflow.com

Electronically FILED by Superior Court of California, County of Los Angeles 6/30/2026 4:29 PM David W. Slayton, Executive Officer/Clerk of Court, By D. Williams, Deputy Clerk

Peter A. Javanmardi, Esq. (State Bar No. 258449)
peter@javanmardilaw.com
Marc A. Holmquist, Esq. (State Bar No. 258406)
marc@holmquistlaw.com
Miranda A. Mossavar, Esq. (State Bar No. 279251)
miranda@mossavarlaw.com
JAVANMARDI LAW, PC | HOLMQUIST LAW, PC
1875 Century Park East, Suite 2250
Los Angeles, CA 90067
Telephone: (424) 286-4240
Facsimile: (310) 564-0347

Attorneys for Plaintiff RONALD WAYNE TOTEN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT**

RONALD WAYNE TOTEN,

Plaintiff,

v.

HADRONEX, INC. d/b/a SMARTCOVER SYSTEMS; BADGER METER, INC.; and DOES 1 through 10, Inclusive,

Defendants.

Case Number: 26STCV20825
[Unlimited Jurisdiction]

**COMPLAINT FOR DAMAGES**

1. FEHA Employment Discrimination (Gov. Code §12940(a));
2. FEHA Harassment (Gov. Code §12940(j));
3. FEHA Retaliation (Gov. Code §12940(h);
4. FEHA Failure to Accommodate (Gov. Code §12940(m));
5. FEHA Failure to Engage in Timely & Good-Faith Interactive Process (Gov. Code §12940(n));
6. FEHA Failure to Prevent/Remedy Discrimination, Harassment or Retaliation (Gov. Code §12940(k));
7. Wrongful Discharge in Violation of Public Policy;
8. Intentional Infliction of Emotional Distress.
9. Defamation
10. Breach of Contract
11. Breach of Express Oral and Implied-in-Fact Contract Not to Terminate Without Good Cause
12. Breach of Implied Covenant of Good Faith and Fair Dealing

**[DEMAND FOR JURY TRIAL]**

Plaintiff RONALD WAYNE TOTEN ("Plaintiff" or "Mr. Toten"), demanding a jury trial, brings this action against Defendants HADRONEX, INC. d/b/a SMARTCOVER SYSTEMS ("Hadronex"); BADGER METER, INC. ("Badger"); and DOES 1 through 10 (collectively "Defendants") for general, compensatory, and punitive damages, as well as costs and attorneys' fees resulting from Defendants' unlawful conduct, and as grounds therefore alleges as follows:

## GENERAL ALLEGATIONS

1. Plaintiff RONALD WAYNE TOTEN ("Plaintiff" or "Mr. Toten") is, and at all relevant times was, an adult individual residing in the State of California.

2. Plaintiff is informed and believes, and on that basis alleges, that Defendant Hadronex is a Delaware corporation doing business as SmartCover Systems, authorized to operate in and operating in the State of California, with a place of business in Escondido, California. At all relevant times, Hadronex was one of Plaintiff's employers.

3. Plaintiff is informed and believes, and on that basis alleges, that Defendant Badger acquired Hadronex, Inc. and/or its business, and at relevant times was Plaintiff's employer, joint employer, and/or the successor in interest to Hadronex, Inc.

4. Defendants Hadronex and Badger (collectively referred to as "Defendants" or "Defendant Employers") jointly employed Plaintiff during the relevant time period through the termination date.

5. Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by these Defendants.

///

6. Plaintiff is informed and believes and based thereon alleges that at all times, each Defendant, whether named or fictitious, was acting as an agent, employee, alter ego, joint venturer, joint employer, and/or integrated enterprise for or with each of the other Defendants and each were co-conspirators with respect to the acts and the wrongful conduct alleged herein, and/or acted within the scope of their authority and/or ratified such conduct of the other(s), so that each is responsible for the acts of the other in connection with the wrongful acts of such other Defendants.

7. Plaintiff is informed and believes and based thereon alleges that each Defendant is so interrelated with each other Defendant that they amount to one entity for purposes of establishing liability. Plaintiff is informed and believes and based thereon alleges that each Defendant exercises such control over the other Defendant(s), including as to corporate decision-making, that they amount to and should be treated as one entity for purposes of establishing liability, including as to Plaintiff and the claims asserted herein.

8. Whenever and wherever reference is made in this Complaint to any act or failure to act by a defendant or co-defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each defendant acting individually, jointly and severally.

9. Plaintiff is informed and believes and based thereon alleges that, at all times material herein, each Defendant and/or its respective agents, employees or supervisors, authorized, condoned and/or ratified the unlawful conduct of each other.

10. Plaintiff is informed and believes and based thereon alleges that, at all times material herein, Defendants and/or their respective agents, employees, or supervisors knew or reasonably should have known that unless they intervened to protect Plaintiff, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct of the employees of Defendants set forth above, the remaining defendants and employees perceived the conduct and omissions as being ratified and condoned.

11. On information and belief, Defendants each employed and have employed at least five (5) employees and is therefore subject to the California Fair Employment and Housing Act, California Government Code section 12900, et seq. (hereafter "FEHA").

12. Plaintiff is informed and believes and based thereon alleges that, at all times material herein, Defendants and/or their respective agents, employees or supervisors, authorized, condoned and/or ratified the unlawful conduct of each other.

13. In addition, Defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited by California Government Code section 12940(i).

## VENUE

14. Plaintiff's work for Defendants took place in various locales based on the physical location of their operations as well as where their clients were located. As such, venue is proper in various counties including Los Angeles County.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

15. In or about June 2016, Plaintiff was retained by SmartCover Systems as a management consultant. He developed software requirements, managed projects, and hired and trained field technicians, and he established and staffed the Texas office, which became the company's National Field Service headquarters and training center.

16. In or about September 2018, Plaintiff was converted from an independent contractor to a W-2 employee with the title of Senior Project Manager. He supported the company's sales and research-and-development functions and was invited to join the senior leadership team. Plaintiff's offer letter stated that stock options would be awarded.

///

///

///

17. Plaintiff was an excellent employee throughout his tenure. He was credited as an inventor on two United States patent publications, he consistently met or exceeded his performance goals as measured by the company's evaluation "Scorecards," and he was repeatedly promoted.

18. In or about February 2020, Plaintiff was promoted to Vice President of Operations. He oversaw Production, Customer Support, and Field Service, developed the company's Injury and Illness Prevention Plan, and managed company-wide COVID-19 compliance.

19. In or about 2022, Plaintiff's responsibilities expanded further. He was granted full signatory authority for company contracts, led recruiting efforts, led the implementation of the HR/Payroll system, and supported the accounting department. The company granted Plaintiff a stock-option award of 40,000 shares.

20. In or about October 2023, Plaintiff was promoted to Executive Vice President of Operations in anticipation of the company's acquisition of Dataflow Systems, LLC, adding responsibility for operations in Melbourne, Florida alongside the Escondido, California, and Texas facilities. In or about November 2023, the company completed that acquisition.

21. In or about 2024, Plaintiff served as Executive Vice President of Operations and functioned, in substance, as a General Manager. He led significant operational-improvement and enterprise-resource-planning initiatives and gradually assumed additional responsibility for information technology, quality, facilities, and fleet. During this period the company's revenue and headcount grew substantially.

22. On or about June 28, 2024, the company granted Plaintiff a second stock-option award of 40,000 shares at an exercise price of $4.54 per share. Of those shares, 15,000 were allocated for Plaintiff's existing performance and 25,000 were subject to performance criteria. The governing option agreement provided that the options would vest in full upon an acquisition of the company.

///

23. Towards the end of 2024, Plaintiff learned that Defendant Badger was looking to acquire Hadronex and the sale was going to take place in 2025. Plaintiff was also told that he was very important to the company and would be retained by Badger.

24. Out of nowhere, on or about January 23, 2025, Defendants' President and Chief Executive Officer, Corey Williams, presented Plaintiff with a letter titled "Change of Certain Employment Terms." The letter purported to change Plaintiff's title and to state that the company "currently plan[ned]" to end his employment on or about July 25, 2025.

25. Plaintiff was shocked to receive the letter and the title change, with the planned transition as of July 25, 2025, and he did not want to sign any document, and stated that he believed he was being targeted based on his age. However, Mr. Williams ensured him that the January 23, 2025 letter was informal and that they needed it signed for the acquisition with Badger to go through. Plaintiff was also guaranteed a role in the new company once everything was finalized. Being a team player, and not wanting to jeopardize the sale, and having a great deal of trust in Mr. Williams' word, Plaintiff signed the document.

26. In reliance on Defendants' representations, Plaintiff continued his employment and performed at a high level. None of the role changes described in the January 23, 2025 letter ever came to pass; Plaintiff continued to serve as Executive Vice President of Operations through the end of his employment.

27. From in or about February 2025 through June 2025, Plaintiff served as an active and contributing member of Defendants' post-acquisition integration teams, including teams addressing operations, the relocation of production from Escondido, California to Racine, Wisconsin, quality, supply chain, and safety and facilities management. Indeed, Plaintiff continued to work above and beyond because of the guarantees that were made to him regarding his future with the company.

///

///

28. In early June 2025, while traveling to Badger's headquarters for meetings, Plaintiff suffered serious injuries after falling. Plaintiff suffered what he believed to be broken ribs and a fractured wrist as a result of the fall. Plaintiff was in pain during his meetings, but there was no effort to grant him any assistance or accommodations for his injury. Indeed, Plaintiff wore a wrist brace after this date in the presence of Defendants' executives and managing agents.

29. Around that same time, in June 2025, one of Plaintiff's subordinates asked him about his departure (which was being called a "retirement") after seeing that Defendants had posted a job opening for a "Director of Operations." Again, Plaintiff was confused and now very embarrassed that he was hearing these things from his subordinates. When Plaintiff inquired about the new role, and the untrue statements that were being made about his supposed retirement, he was told he was not being considered for the position; instead, Defendants were seeking a much younger replacement who ultimately took over in this position. Defendants' Chief Executive Officer later confirmed that Plaintiff's termination was impending and offered him a "retirement party." Plaintiff again reiterated and clarified he was not retiring, but rather was being removed from the company.

30. Plaintiff is informed and believes, and on that basis alleges, that he was the oldest member of Defendants' senior executive group, and that Defendants' reference to a "retirement" reflected an assumption and intent based on Plaintiff's age. Plaintiff is also informed and believes that the injury he suffered in early June 2025 contributed to the Company's decision as he was seen as not only old but also frail and susceptible to further injuries, something that Defendants did not want to deal with.

31. On or about June 17, 2025, Plaintiff received a formal written notice of termination from Badger, signed by Corey Williams and Sheryl Hopkins. The letter confirmed that Mr. Toten's employment would officially end as of July 25, 2025 and that Badger was no longer interested in extending his employment or hiring him for any

other role, despite the previous representations to the contrary. Plaintiff again raised his concerns that the termination was based on illegal reasons.

32. Plaintiff is informed and believes, and on that basis alleges, that Defendants told Plaintiff's subordinates that he had received a "6-month working severance," while Defendants' representatives separately asserted that Plaintiff had been terminated for poor performance or simply retired. These statements, which took place between June 2025 and the July 2025 termination, and also from the termination date to the present, are defamatory and they are also inconsistent with one another and with Plaintiff's record of promotion, bonuses, and continued integration-team work.

33. Defendants, their owners, managers, agents, representatives, and/or employees have also defamed Plaintiff, starting in June 2025, and the defamation is believed to be ongoing to this date. Defendants specifically published the following untrue statements about Plaintiff: (1) that Plaintiff was on a "working severance" for 6 months, i.e., that he was being paid and not performing any work from January 2025 to July 2025; (2) that Plaintiff's performance was unsatisfactory and that is why Badger did not retain him as an employee; and (3) that Plaintiff retired. First, Plaintiff is compelled to self-publish such statements in his job search each time he is asked why he left Hadronex and Badger after 9 years of employment and/or asked for the reasons given to him for the termination. This compelled self-publication was reasonably foreseeable to Defendants when they, or those acting on their behalf and/or with their prior knowledge, authority, consent, direction, and/or ratification, first published those statements. Next, each of the Defendants has broadly and excessively published the false allegations to others in the company without a need to know, and even to others outside the company. Many colleagues of Plaintiff have been told these untrue statements. Plaintiff believes Defendants continue to defame him. The publication of all such statements with malice destroys any privilege that may otherwise attach to such publication. Malice is evidenced by Defendants making the defamatory statements

knowing they were false or with reckless disregard for their truth as a means to justify Plaintiff's wrongful termination and refusal to retain him within the company.

34. Plaintiff has suffered greatly as a result of the wrongful termination and other illegal conduct, which has had a devastating effect on his daily life, ability to work, and overall well-being. He has sought treatment and counseling and has been prescribed and has taken medications as a result.

35. Plaintiff is informed and believes, and on that basis alleges, that the reasons Defendants gave for his termination are false and pretextual, and that the true reasons included Plaintiff's age, disability, and protected activity.

36. Plaintiff was 66 years of age when his employment was terminated.

37. On or about June 24, 2026, Plaintiff exhausted his administrative remedies by timely filing a Complaint of Discrimination with the California Civil Rights Department ("CRD"), regarding the claims alleged herein against Defendants. Per Plaintiff's request, an immediate right-to-sue letter was issued on June 24, 2026.

## FIRST CAUSE OF ACTION

**(Employment Discrimination in Violation of FEHA (Gov. Code § 12940(a)) Against All Defendants, and Does 1-10)**

38. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

39. Under Government Code section 12940(a), it is an unlawful employment practice for an employer to refuse to hire or employ a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, the person's age, or disability.

40. At all times mentioned in this Complaint, Defendants regularly employed five or more persons, bringing them within the provisions of FEHA, which prohibits employers or their agents from, among other things, discriminating against employees based on age, and/or disability (including a perceived disability).

41. Plaintiff was subjected to discrimination in the workplace. Plaintiff is informed and believes that said discrimination was based on his age (66 at the time of termination) and/or disability.

42. Plaintiff is also informed and believes and based thereon alleges that Defendants had a desire to replace their older employees with younger and healthier (or perceived to be healthier) employees, and/or employees who were paid less. Plaintiff is informed and believes that he was replaced by a significantly younger employee who was not disabled.

43. Defendants engaged in unlawful employment practices in violation of FEHA by terminating Plaintiff from his position based on the protected reasons stated above, and then by failing to place Plaintiff in another open position that was promised to him as of January 2025. Plaintiff believes and alleges that these protected characteristics, and his engaging in protected activities, were substantial and motivating factors in Defendants' decision to terminate Plaintiff's employment. Furthermore, Defendants' refusal to rehire Plaintiff into any other open position was also illegal and discriminatory. The illegal conduct continues through the date of this filing.

44. As a direct, foreseeable, and proximate result of Defendants' discriminatory acts, Plaintiff has suffered and continues to suffer injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

45. As a further proximate result of the conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

///

46. As a result of the above, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

47. In doing the acts herein alleged, Defendants, through their agents, officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff. Alternatively, Defendants' agents, officers, directors, and managing agents ratified oppressive, fraudulent, and/or malicious conduct against Plaintiff and other older or otherwise protected employees. As such, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

48. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

**<u>SECOND CAUSE OF ACTION</u>**

**(Harassment, Pursuant to Government Code § 12940(j), Against All Defendants, and Does 1 through 10)**

49. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

50. Under Government Code section 12940(j), it is unlawful for an employer or individual to harass an employee based on, among other things, the employee's age, race, national origin, ancestry, and/or disability.

51. Defendants engaged in actions to harass Plaintiff, at the time a 66-year-old male employee with a stellar performance history. Defendants, through their officers, directors, and managing agents, violated Government Code section 12940(j) by creating a hostile work environment and by failing to prevent said acts from occurring. Defendants used Plaintiff's expertise to finalize the acquisition, then promised him future employment while having him fly around the country to make sure the transition was smooth, and then terminated his employment and hired a much

younger person to replace him. Defendants then spread untrue statements about Plaintiff regarding his performance and his desire to retire. Defendants continued to refuse to reinstate or transfer Plaintiff to any other position both before and after the termination to the present day.

52. Defendants indicated a desire to hire younger, healthier, and less expensive workers in place of older workers like Plaintiff, and on information and belief they carried out these desires. Defendants terminated Plaintiff's employment for false, pretextual, and malicious reasons based on his protected characteristics.

53. The conduct was carried out, authorized, and/or ratified by Plaintiff's managers and other officers, directors and/or managing agents of Defendant; therefore, each Defendant is strictly liable for the conduct. Alternatively, the actions were known by Defendants' officers, directors and/or managing agents yet nothing was done to prevent it. In either event, Defendants are liable for the conduct because the harassers were managers and/or because Defendants knew or should have known of the conduct and failed to prevent it and/or ratified and/or condoned it.

54. Plaintiff believes that his age and/or disability (including perceived disability) were the cause of the unwanted harassing conduct described above. The actions were sufficiently severe or pervasive to alter the conditions of employment and thereby constituted a hostile work environment in violation of FEHA.

55. As a direct, foreseeable, and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial.

56. As a further proximate result of Defendants' conduct described herein, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

///

57. In doing the acts herein alleged, Defendants, through their agents, officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff. Alternatively, Defendants' agents, officers, directors, and managing agents ratified oppressive, fraudulent, and/or malicious conduct against Plaintiff and other older or otherwise protected employees. As such, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

58. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

## THIRD CAUSE OF ACTION

**(Retaliation, Pursuant to Government Code § 12940(h), Against All Defendants, and Does 1 through 10)**

59. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

60. Government Code section 12940(h) provides that it is unlawful for an employer to discriminate against any person because the person has engaged in protected activities under FEHA.

61. Plaintiff engaged in more than one protected activity under FEHA preceding his ultimate termination, including making complaints that he was being treated differently (e.g., because of his age) based on Defendants' desire to bring in younger employees to take over Plaintiff's work. Plaintiff also protested the illegal termination and asked to be reinstated. Finally, Plaintiff disclosed a disability, for which he needed accommodations, after he suffered an injury in June 2025, just days before he received the letter stating his employment would be terminated effective July 25, 2025.

///

62. In response to Plaintiff's protected complaints, Plaintiff's employment was terminated effective July 25, 2025, and no other jobs were offered to him despite previous promises that he would be retained after the acquisition.

63. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer aggravation of injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

64. As a further proximate result of the conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

65. In doing the acts herein alleged, Defendants, through their agents, officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff. Alternatively, Defendants' agents, officers, directors, and managing agents ratified oppressive, fraudulent, and/or malicious conduct against Plaintiff and other older or otherwise protected employees. As such, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

66. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

///

///

///

///

///

## FOURTH CAUSE OF ACTION

**(Failure to Provide Reasonable Accommodation in Violation of FEHA (Gov. Code §12940(m)), Against All Defendants, and Does 1-10)**

67. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

68. Under Government Code section 12940(m), it is unlawful for an employer to fail to provide reasonable accommodations for an applicant or employee with a disability and/or medical condition. The employer also has an affirmative duty to, among other things, inform employees and applicants with a disability of other job opportunities and ascertain whether the employee or applicant is interested in, or qualified for said positions. Additionally, an employer who regards an employee or applicant as disabled also has a duty to provide reasonable accommodations for that employee.

69. Plaintiff was disabled and/or perceived by Defendants as having a protected disability. Plaintiff also requested reasonable accommodation for his disability and/or provided notice to Defendants of the need for accommodation in the form of time off to receive treatment and/or temporary adjustments to his work travel or other assistance that would allow him to continue performing his essential job duties. Plaintiff could have also benefited from intermittent time off. As such, Defendants, who were aware of Plaintiff's disabilities, and/or who regarded Plaintiff as disabled, had a duty to provide Plaintiff with reasonable accommodation.

70. Defendants violated Government Code section 12940(m) by refusing to provide a reasonable accommodation for Plaintiff's disability or perceived disability. Instead of offering to provide Plaintiff with reasonable accommodations for his disabilities, Defendants further harassed Plaintiff and then terminated Plaintiff's employment and replaced him with a younger employee. Defendants also failed to abide by their promise to keep Plaintiff employed after the acquisition took place.

///

///

71. As a proximate result of Defendants' violation of Government Code section 12940(m), Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial. Plaintiff claims these damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

72. As a further proximate result of Defendants' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

73. In doing the acts herein alleged, Defendants, through their agents, officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff. Alternatively, Defendants' agents, officers, directors, and managing agents ratified oppressive, fraudulent, and/or malicious conduct against Plaintiff and other older or otherwise protected employees. As such, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

74. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

## FIFTH CAUSE OF ACTION

**(Failure to Engage in a Timely and Good Faith Interactive Process in Violation of FEHA (Gov. Code §12940(n)), Against All Defendants, and Does 1-10)**

75. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

///

///

76. Under Government Code section 12940(n), it is unlawful for an employer to fail to engage in a timely, good faith interactive process to determine effective reasonable accommodations, if any, for an employee or applicant with a disability or protected medical condition. Section 12940(n) also requires an employer who regards an employee as disabled or having a medical condition to engage that employee in a timely, good faith interactive process to determine effective accommodations for that perceived disability and/or medical condition. Engaging in the interactive process is a continuing duty of the employer under FEHA.

77. Plaintiff was disabled and/or perceived as disabled within the meaning of FEHA, and Defendants was aware of the same. Alternatively, Defendants perceived Plaintiff as being disabled. Defendants failed to engage in a timely, good faith interactive process with Plaintiff at all required times.

78. Defendants were aware of Plaintiff's disability because Plaintiff made it known to Defendants and because various managing agents and executives who working with Plaintiff at the time witnessed the aftermath of the injury.

79. Plaintiff in good faith requested that Defendants engage in an interactive process to determine an effective reasonable accommodation for his disabilities and/or medical condition

80. Defendants violated Government Code section 12940(n) by failing to engage in a timely and good faith interactive process with Plaintiff. Instead, Plaintiff was denied accommodations, and his employment was subsequently terminated.

81. As a direct, foreseeable, and proximate result of Defendants' failure to engage in a timely and good faith interactive process, Plaintiff has suffered and continues to suffer aggravation of his injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together

with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

82. As a further proximate result of Defendants' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

83. In doing the acts herein alleged, Defendants, through their agents, officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff. Alternatively, Defendants' agents, officers, directors, and managing agents ratified oppressive, fraudulent, and/or malicious conduct against Plaintiff and other older or otherwise protected employees. As such, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

84. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

## SIXTH CAUSE OF ACTION

**(Failure to Prevent or Remedy Discrimination, Harassment, and/or Retaliation in Violation of FEHA (Gov. Code §12940(k)), Against All Defendants, and Does 1-10)**

85. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

86. Defendants failed to prevent the above-referenced acts of discrimination, harassment, and retaliation towards Plaintiff, in violation of Government Code section 12940(k). The failure to undertake a prompt and adequate investigation and complete failure to prevent the above-alleged acts of discrimination, and retaliation constitutes an unlawful employment practice. Such conduct is in violation of FEHA and has resulted in damage and injury to Plaintiff as alleged herein.

87. As a proximate result of Defendants' violation of Government Code section 12940(k), Plaintiff has suffered and continues to suffer injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount over the minimum jurisdiction of this Court, the precise amount of which will be proven at trial. Plaintiff claims such amount as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other law providing for pre-judgment interest.

88. In doing the acts herein alleged, Defendants, through their agents, officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff. Alternatively, Defendants' agents, officers, directors, and managing agents ratified oppressive, fraudulent, and/or malicious conduct against Plaintiff and other older or otherwise protected employees. As such, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

89. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Government Code section 12965(b).

## SEVENTH CAUSE OF ACTION

**(Wrongful Discharge in Violation of Public Policy,**

**Against All Defendants, and Does 1-10)**

90. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

91. The above-described conduct of Defendants constitute discrimination, harassment, retaliation, and wrongful termination of Plaintiff in violation of public policy embodied in FEHA, codified at California Government Code sections 12900–12996, the California Constitution, as well as the California Labor Code.

///

92. As a proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injuries, substantial losses in earnings and job benefits, humiliation, embarrassment, mental and emotional distress, and discomfort, all to Plaintiff's damage in an amount over this Court's jurisdictional minimum, to be proven at trial.

93. As a further proximate result of Defendants' conduct described in this Complaint, Plaintiff has incurred and will continue to incur medical expenses in an amount according to proof at the time of trial.

94. In doing the acts herein alleged, Defendants, through their agents, officers, directors, and/or managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff. Alternatively, Defendants' agents, officers, directors, and managing agents ratified oppressive, fraudulent, and/or malicious conduct against Plaintiff and other older or otherwise protected employees. As such, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

95. As a further result of the wrongful conduct of Defendants, Plaintiff is also entitled to attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5.

## EIGHTH CAUSE OF ACTION

**(Intentional Infliction of Emotional Distress,**

**Against All Defendants, and Does 1-10)**

96. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

97. The conduct of Defendants set forth above was so extreme and outrageous that it exceeded the boundaries of a decent society and lies outside the compensation bargain. Said conduct was intended to cause Plaintiff severe emotional distress or was done in conscious disregard of the probability of causing severe emotional distress. Said conduct was also in direct violation of California law public policy, specifically those found in the California Civil Code and FEHA.

98. As a proximate result of the wrongful conduct of Defendants, Plaintiff has sustained substantial losses in earnings and other employment benefits in an amount according to proof at the time of trial.

99. As a further proximate result of the wrongful conduct of DefendantS, Plaintiff has suffered and continues to suffer humiliation, embarrassment, severe emotional distress, and mental anguish, all to Plaintiff's damage in an amount according to proof at the time of trial.

100. In doing the acts herein alleged, Defendants, and each of them, through their managing agents, acted with oppression, fraud, malice, and in the conscious disregard of the rights of Plaintiff; therefore, Plaintiff is also entitled to punitive damages in an amount according to proof at the time of trial.

## NINTH CAUSE OF ACTION

**(Defamation, Against All Defendants, and Does 1-10)**

101. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

102. Plaintiff is informed and believes Defendants, and each of them, by the herein described acts, conspired to, and in fact did, negligently, recklessly, maliciously, and intentionally caused internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied statements that Plaintiff engaged in misconduct, was a poor performer who was not competent to perform his job, and that he had chosen to retire. While the precise dates of each publication are not known, Plaintiff is informed and believes that they occurred starting in or around June 2025 and continue to the present, and continued after the termination, to the present. Said statements as well as the company terminating Plaintiff after 9 years of employment have made it difficult for Plaintiff to secure replacement work.

///

103. The defamatory publications consisted of oral and written, knowingly false and unprivileged communications tending to injure Plaintiff and Plaintiff's personal, business, and professional reputation, including Plaintiff's own compelled self-publication of the defamatory statements to members of the community as well as to prospective employers. These publications included the following false and defamatory statements (in violation of Civil Code §§ 45, 45a and 46(1)(3)(5)) that Plaintiff engaged in misconduct, was a poor performer who was not competent to perform his job, and that he had chosen to retire.

104. Plaintiff is informed, believes and fears that these false and defamatory per se statements will continue to be published by Defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements, which continue to occur.

105. The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to Defendants.

106. None of Defendants' defamatory publications against Plaintiff are true. All published statements were understood as assertions of fact, and not as opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, maliciously, and intentionally published and foreseeably republished by Defendants, and each of them, and foreseeably republished by recipients of Defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

107. Each of these false defamatory per se publications (as set forth above) were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege (which Plaintiff denies existed), since the

publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of Defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, and to cause his employment to be terminated.

108. Each of these publications by Defendants, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. Defendants published these statements knowing them to be false, unsubstantiated by any reasonable investigation. These acts of publication were known by Defendants, and each of them, to be negligent to such a degree as to be reckless. In fact, not only did Defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false. Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

109. The above complained-of publications by Defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability. Defendants, and each of them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation. Therefore, no privilege existed to protect any of the Defendants from liability for any of these aforementioned publications or republications.

110. As a proximate result of the publication and republication of these defamatory statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount

according to proof. Plaintiff is therefore entitled to recover all economic and non-economic damages. Plaintiff claims such amounts as damages together with pre-judgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for pre-judgment interest.

111. Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice (as described above), and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the Defendants, and each of them. Plaintiff thus is entitled to recover punitive and exemplary damages from Defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at the time of trial. Defendants' defamatory publications were a substantial factor in causing Plaintiff harm. Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court

112. Plaintiff, who has incurred and continues to incur attorneys' fees and legal expenses, is also entitled to recover said costs and fees in an amount according to proof at the time of trial, pursuant to Code of Civil Procedure section 1021.5.

## TENTH CAUSE OF ACTION

**(Breach of Contract, Against All Defendants, and Does 1-10)**

113. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein

114. Defendants, through their agents, made assurances to Plaintiff that he would be retained through the acquisition in 2025. Indeed, Plaintiff was guaranteed that he would be retained after July 2025 as long as he signed the January 23, 2025 letter. Defendants thereby entered into an express oral agreement not to terminate Plaintiff's

employment except for good cause. Plaintiff and Defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

115. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

116. As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

## ELEVENTH CAUSE OF ACTION

**(Breach of Express Oral and Implied-in-Fact Contract Not to Terminate Employment Without Good Cause Against All Defendants, and Does 1-10)**

117. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

118. On the basis of oral assurances of continued employment given to plaintiff by Defendants' executives, including CEO Corey Williams, the length of plaintiff's employment with Defendants, Defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, Plaintiff and Defendants shared the actual understanding that Plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

119. Alternatively, by virtue of the totality of the parties' conduct and relationship—including Defendants' oral assurances of continued employment, the approximately nine-year length of Plaintiff's employment, Plaintiff's consistent promotions, raises, bonuses, and favorable performance evaluations, Defendants' actual

practice of terminating employees only for cause, and the industry custom of terminating employment only for cause—Plaintiff and Defendants developed an implied-in-fact agreement that Plaintiff's employment would not be terminated except for good cause. This implied-in-fact contract was independent of, and supplemental to, any express agreement between the parties.

120. Plaintiff performed all of the conditions, covenants, and obligations required of him under the implied-in-fact contract, except those that were excused or prevented by Defendants. Defendants, through their managers and supervisors, breached the implied-in-fact contract by terminating Plaintiff's employment without good cause. As a direct and proximate result of Defendants' breach of the implied-in-fact contract not to terminate employment without good cause, Plaintiff has suffered and continues to suffer damages, including lost earnings and benefits, in a sum according to proof.

121. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

122. As a proximate result of Defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

## TWELFTH CAUSE OF ACTION

**(Breach of Implied Covenant of Good Faith and Fair Dealing, Against All Defendants, and Does 1-10)**

123. Plaintiff re-alleges and incorporates all previous and subsequent paragraphs of this Complaint, as though fully set forth herein.

///

124. In every contract or agreement there's an implied promise of good faith and fair dealing – i.e., each party will not do anything to unfairly interfere with the right of any other party to receive the benefit of the contract.

125. Plaintiff was promised a role with the company after the acquisition if he signed the document presented to him in January 2025, and continued to work at a high level for the following six months. Plaintiff performed his end of the bargain and performed at a very high level and was instrumental in making sure the acquisition went through smoothly.

126. Instead of abiding by the terms of the agreement, Defendants terminated Plaintiff's employment and refused to place him in any other position within the company. By their actions, Defendants violated the duty to act fairly and in good faith.

127. As a direct and proximate result of Defendants' breach, Plaintiff has suffered and continues to suffer damages, including lost earnings and benefits, in a sum according to proof.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff **RONALD WAYNE TOTEN** prays for judgment against Defendants **HADRONEX, INC. dba SMART COVER SYSTEMS; BADGER METER, INC.**; and **DOES 1 through 10**, as follows:

1. For past and future compensatory damages, according to proof;
2. For pre and post-judgment interest at the legal rate;
3. For exemplary and punitive damages according to proof;
4. Injunctive, equitable and declaratory relief, including penalties;
5. Attorneys' fees and costs of suit;
6. For such other and further relief as the Court deems proper.

Dated: June 30, 2026 JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

Peter A. Javanmardi, Esq.
Marc A. Holmquist, Esq.
Miranda A. Mossavar, Esq.
Attorneys for Plaintiff, Ronald Wayne Toten

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: June 30, 2026 JAVANMARDI LAW, PC | HOLMQUIST LAW, PC

Peter A. Javanmardi, Esq.
Marc A. Holmquist, Esq.
Miranda A. Mossavar, Esq.
Attorneys for Plaintiff, Ronald Wayne Toten

*Superior Court of California, County of Los Angeles*

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE**

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS MUST SERVE THIS ADR INFORMATION PACKAGE ON ANY NEW PARTIES NAMED TO THE ACTION WITH THE CROSS-COMPLAINT.**

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) helps people find solutions to their legal disputes without going to trial. The Court offers a variety of ADR resources and programs for various case types.

**TYPES OF ADR**

- **Negotiation.** Parties may talk with each other about resolving their case at any time. If the parties have attorneys, they will negotiate for their clients.
- **Mediation.** Mediation may be appropriate for parties who want to work out a solution but need help from a neutral third party. A mediator can help the parties reach a mutually acceptable resolution. Mediation may be appropriate when the parties have communication problems and/or strong emotions that interfere with resolution. Mediation may not be appropriate when the parties want a public trial, lack equal bargaining power, or have a history of physical or emotional abuse.
- **Arbitration.** Less formal than a trial, parties present evidence and arguments to an arbitrator who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.
- **Settlement Conferences.** A judge or qualified settlement officer assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Mandatory settlement conferences may be ordered by a judicial officer. In some cases, voluntary settlement conferences may be requested by the parties.

**ADVANTAGES OF ADR**

- **Save time and money.** Utilizing ADR methods is often faster than going to trial and parties can save on court costs, attorney's fees, and other charges.
- **Reduce stress and protect privacy.** ADR is conducted outside of a courtroom setting and does not involve a public trial.
- **Help parties maintain control.** For many types of ADR, parties may choose their ADR process and provider.

**DISADVANTAGES OF ADR**

- **Costs.** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial.** ADR does not provide a public trial or decision by a judge or jury.

**WEBSITE RESOURCES FOR ADR**

- **Los Angeles Superior Court ADR website:** www.lacourt.org/ADR
- **California Courts ADR website:** www.courts.ca.gov/programs-adr.htm

**Los Angeles Superior Court ADR Programs for Unlimited Civil (cases valued over $35,000)**

Litigants should closely review the requirements for each program and the types of cases served.

- **Civil Mediation Vendor Resource List.** Litigants in unlimited civil cases may use the Civil Mediation Vendor Resource List to arrange voluntary mediations without Court referral or involvement. The Resource List includes organizations that have been selected through a formal process that have agreed to provide a limited number of low-cost or no-cost mediation sessions with attorney mediators or retired judges. Organizations may accept or decline cases at their discretion. Mediations are scheduled directly with these organizations and are most often conducted through videoconferencing. The organizations on the Resource List target active civil cases valued between $50,000-$250,000, though cases outside this range may be considered. *For more information and to view the list of vendors and their contact information, download the Resource List Flyer and FAQ Sheet at www.lacourt.org/ADR/programs.html.*
  **RESOURCE LIST DISCLAIMER:** The Court provides this list as a public service. The Court does not endorse, recommend, or make any warranty as to the qualifications or competency of any provider on this list. Inclusion on this list is based on the representations of the provider. The Court assumes no responsibility or liability of any kind for any act or omission of any provider on this list.

- **Mediation Volunteer Panel (MVP).** Unlimited civil cases referred by judicial officers to the Court's Mediation Volunteer Panel (MVP) are eligible for three hours of virtual mediation at no cost with a qualified mediator from the MVP. Through this program, mediators volunteer preparation time and three hours of mediation at no charge. If the parties agree to continue the mediation after three hours, the mediator may charge their market hourly rate. When a case is referred to the MVP, the Court's ADR Office will provide information and instructions to the parties. The Notice directs parties to meet and confer to select a mediator from the MVP or they may request that the ADR Office assign them a mediator. The assigned MVP mediator will coordinate the mediation with the parties. *For more information or to view MVP mediator profiles, visit the Court's ADR webpage at www.lacourt.org/ADR or email ADRCivil@lacourt.org.*

- **Mediation Center of Los Angeles (MCLA) Referral Program.** The Court may refer unlimited civil cases to mediation through a formal contract with the Mediation Center of Los Angeles (MCLA), a nonprofit organization that manages a panel of highly qualified mediators. Cases must be referred by a judicial officer or the Court's ADR Office. The Court's ADR Office will provide the parties with information for submitting the case intake form for this program. MCLA will assign a mediator based on the type of case presented and the availability of the mediator to complete the mediation in an appropriate time frame. MCLA has a designated fee schedule for this program. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

- **Resolve Law LA (RLLA) Virtual Mandatory Settlement Conferences (MSC).** Resolve Law LA provides three-hour virtual Mandatory Settlement Conferences at no cost for personal injury and non-complex employment cases. Cases must be ordered into the program by a judge pursuant to applicable Standing Orders issued by the Court and must complete the program's online registration process. The program leverages the talent of attorney mediators with at least 10 years of litigation experience who volunteer as settlement officers. Each MSC includes two settlement officers, one each from the plaintiff and defense bars. Resolve Law LA is a joint effort of the Court, Consumer Attorneys Association of Los Angeles County (CAALA), Association of Southern California Defense Counsel (ASCDC), Los Angeles Chapter of the American Board of Trial Advocates (LA-ABOTA), Beverly Hills Bar Foundation (BHBF), California Employment Lawyers Association (CELA), and Los Angeles County Bar Association (LACBA). *For more information, visit https://resolvelawla.com.*

- **Judicial Mandatory Settlement Conferences (MSCs).** Judicial MSCs are ordered by the Court for unlimited civil cases and may be held close to the trial date or on the day of trial. The parties and their attorneys meet with a judicial officer who does not make a decision, but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For more information, visit https://www.lacourt.org/division/civil/CI0047.aspx.

**Los Angeles Superior Court ADR Programs for Limited Civil (cases valued below $35,000)**

Litigants should closely review the requirements for each program and the types of cases served.

- **Dispute Resolution Program Act (DRPA) Day-of-Hearing Mediation.** Through the Dispute Resolution Program Act (DRPA), the Court works with county-funded agencies, including the Los Angeles County Department of Consumer & Business Affairs (DCBA) and the Center for Conflict Resolution (CCR), to provide voluntary day-of-hearing mediation services for small claims, unlawful detainer, limited civil, and civil harassment matters. DCBA and CCR staff and trained volunteers serve as mediators, primarily for self-represented litigants. There is no charge to litigants. *For more information, visit https://dcba.lacounty.gov/countywidedrp.*

- **Temporary Judge Unlawful Detainer Mandatory Settlement Conference Pilot Program.** Temporary judges who have been trained as settlement officers are deployed by the Court to designated unlawful detainer court locations one day each week to facilitate settlement of unlawful detainer cases on the day of trial. For this program, cases may be ordered to participate in a Mandatory Settlement Conference (MSC) by judicial officers at Stanley Mosk, Long Beach, Compton, or Santa Monica. Settlement rooms and forms are available for use on the designated day at each courthouse location. There is no charge to litigants for the MSC. *For more information, contact the Court's ADR Office at ADRCivil@lacourt.org.*

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>06/30/2026<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: D. Williams Deputy |
| NOTICE OF CASE ASSIGNMENT<br>UNLIMITED CIVIL CASE | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>26STCV20825 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Daniel M. Crowley | 729 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record David W. Slayton, Executive Officer / Clerk of Court

on 07/01/2026 (Date) By D. Williams, Deputy Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

**APPLICATION**
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

**COMPLAINTS**
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

**CROSS-COMPLAINTS**
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

**STATUS CONFERENCE**
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

**Class Actions**
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

***Provisionally Complex Cases**
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

# EXHIBIT B

REGISTERED AGENT SOLUTIONS INC
A WOLTERS KLUWER COMPANY

**Registered Agent Solutions, Inc.**
*Corporate Mailing Address*
5301 Southwest Parkway, Suite 400
Austin, TX 78735

**Phone:** (888) 705-7274

# SERVICE OF PROCESS RECEIPT

7/22/2026

Cate Martin
**Badger Meter, Inc.**
4545 W. Brown Deer Road
Milwaukee, WI 53223 USA

## NOTICE OF CONFIDENTIALITY

This notice and the information it contains are intended to be a confidential communication only to the individual and/or entity to whom it is addressed. If you have received this notice in error, immediately call our SOP Department at (888) 705-7274.

**RE: Badger Meter, Inc.**

This receipt is to inform you that Registered Agent Solutions, Inc. has received a Service of Process on behalf of the above-referenced entity as your registered agent and is hereby forwarding the attached document(s) for your immediate review. A Summary of the service is shown below; however, it is important that you review the attached document(s) in their entirety for complete and detailed information.

For additional information and instruction, contact the document issuer: JAVANMARDI LAW, PC I HOLMQUIST

## SERVICE INFORMATION

Service Date: 7/22/2026
Service Time: 11:07 AM PDT
Service Method: Process Server

## RASi REFERENCE INFORMATION

Service No.: 0463690
RASi Office: California
Rec. Int. Id.: ALG

## CASE INFORMATION

Case Number: 26STCV20825
File Date: 6/30/2026
Jurisdiction: SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
Case Title: RONALD WAYNE TOTEN VS. HADRONEX, INC; ET AL.

## ANSWER / APPEARANCE INFORMATION

30 days

*(Be sure to review the document(s) for any required response dates)*

## AGENCY / PLAINTIFF INFORMATION

Firm/Issuing Agent: JAVANMARDI LAW, PC I HOLMQUIST LAW, PC
Attorney/Contact: MARC A. HOLMQUIST
Location: California
Telephone No.: 424-286-4240

## DOCUMENT(S) RECEIVED & ATTACHED

Complaint
Summons
Notice: OF CASE MANAGEMENT
Demand for Jury Trial

## ADDITIONAL NOTES:

**Questions?** Should you have any questions or need additional assistance, please contact the SOP Department at (888) 705-7274.

You have been notified of this Service of Process by Insta-SOP Delivery, a secure email transmission. The transmitted documents have also been uploaded to your Corpliance account. RASi offers additional methods of notification including Telephone Notification and FedEx Delivery. If you would like to update your account's notification preferences, please log into your Corpliance account at www.rasi.com.

*Thank you for your continued business!*

# EXHIBIT C

MILLICENT N. SANCHEZ (State Bar No. 108613)
Email: msanchez@swerdlowlaw.com
LORI M. YANKELEVITS (State Bar No. 156253)
Email: lyankelevits@swerdlowlaw.com
**SWERDLOW FLORENCE**
**SANCHEZ SWERDLOW & WIMMER**
A Law Corporation
10877 Wilshire Blvd., Suite 1650
Los Angeles, California 90024
Telephone: (310) 288-3980
Facsimile: (310) 733-1727

**Electronically FILED by Superior Court of California, County of Los Angeles 8/19/2026 3:32 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Bolden, Deputy Clerk**

Attorneys for Defendant, Badger Meter, Inc.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| RONALD WAYNE TOTEN,<br>Plaintiff,<br>vs.<br>HADRONEX, INC. d/b/a SMARTCOVER SYSTEMS; BADGER METER, INC.; and DOES 1 through 10, Inclusive,<br>Defendants. | Case No. 26STCV20825<br>**DEFENDANT BADGER METER, INC.'S ANSWER TO COMPLAINT**<br>*Assigned for all purposed to: Hon. Daniel M. Crowley; Dept. 729*<br>Action Filed: June 30, 2026<br>Trial Date: None Set |

Defendant, BADGER METER, INC. ("Defendant"), for itself alone and for no other defendant, answers the unverified Complaint herein as follows:

1. Pursuant to the provisions of § 431.30 of the California Code of Civil Procedure, Defendant denies each and every, all and singular, allegations of said Complaint and further denies that Plaintiff, Ronald Wayne Toten, was damaged in the sum or sums alleged or in any sum or at all.

###

AS AND FOR ITS AFFIRMATIVE DEFENSES TO ALL CAUSES OF ACTION PURPORTED TO BE SET FORTH AGAINST IT IN THE COMPLAINT HEREIN, THIS ANSWERING DEFENDANT AVERS AS FOLLOWS:

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**FIRST AFFIRMATIVE DEFENSE:**

1. Said causes of action, and each of them, fail to state facts sufficient to constitute a cause of action.

**SECOND AFFIRMATIVE DEFENSE:**

2. Venue is improper in Los Angeles County because the underlying action purportedly occurred in San Diego County, California.

**THIRD AFFIRMATIVE DEFENSE:**

3. Plaintiff's claims are subject to arbitration pursuant to the arbitration agreement Plaintiff signed with his former employer, Hadronex, Inc., and G&A Partners.

**FOURTH AFFIRMATIVE DEFENSE:**

4. If Defendant did wrongfully terminate Plaintiff, although such is not admitted hereby or herein, Plaintiff had a duty to mitigate damages by promptly seeking employment elsewhere. By the exercise of reasonable effort, Plaintiff could have obtained employment elsewhere of substantially similar character promptly following the alleged breach by Defendant. If Plaintiff failed and refused to exercise such effort and refused to accept such employment elsewhere, then his damages must be mitigated.

**FIFTH AFFIRMATIVE DEFENSE:**

5. If Defendant did subject Plaintiff to any wrongful or unlawful conduct resulting in mental, physical or emotional harm, although such is not admitted hereby or herein, Plaintiff had a duty to mitigate any damages Plaintiff may have suffered by seeking medical and psychological treatment and Plaintiff has failed to do so. Therefore, his damages must be mitigated.

**SIXTH AFFIRMATIVE DEFENSE:**

6. As to any claim by Plaintiff for physical, mental or emotional distress, said claim is barred, in whole or in part, by California Labor Code §§ 3200 *et seq*., which provide that workers' compensation is Plaintiff's exclusive remedy.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**SEVENTH AFFIRMATIVE DEFENSE:**

7. If Plaintiff sustained any injury, as alleged in Plaintiff's Complaint, then the same arose out of and in the course and scope of Plaintiff's employment. Plaintiff's sole right of recovery or action under Plaintiff's Complaint is under the California Workers' Compensation Act, California Labor Code Section 3200 *et seq*. Therefore, Plaintiff is barred from recovery.

**EIGHTH AFFIRMATIVE DEFENSE:**

8. Said causes of action, and each of them, are barred, in whole or in part, by the equitable doctrine of estoppel.

**NINTH AFFIRMATIVE DEFENSE:**

9. Said causes of action, and each of them, are barred, in whole or in part, by the equitable doctrine of unclean hands.

**TENTH AFFIRMATIVE DEFENSE:**

10. Plaintiff's Complaint, to the extent that it seeks punitive or exemplary damages based on the alleged acts of Defendant, violates Defendant's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the California Constitution. Plaintiff's Complaint, therefore, fails to state a cause of action supporting the punitive or exemplary damages claimed.

**ELEVENTH AFFIRMATIVE DEFENSE:**

11. Plaintiff's claims are "frivolous, unreasonable, or groundless," within the meaning of *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978), and accordingly, Defendant should recover all costs and attorneys' fees incurred herein. Defendant is also entitled to all costs and attorneys' fees incurred herein under California Civil Procedure Code Section 128.5 and sanctions pursuant to Section 128.7.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**TWELFTH AFFIRMATIVE DEFENSE:**

12. Defendant intends to rely upon any other defenses that may become available or appear during the discovery proceedings in this case and hereby gives notice and reserves the right to amend its answer to assert any such defenses.

# # #

**WHEREFORE, Defendant Badger Meter, Inc. prays for judgment as follows:**

(1) That Plaintiff's Complaint and each cause of action thereof be dismissed with prejudice;

(2) That Plaintiff take nothing by Plaintiff's Complaint;

(3) That this answering Defendant be awarded its costs incurred herein, including attorneys' fees; and

(4) That the Court order such other and further relief for this answering Defendant as the Court may deem just and proper.

DATED: August 19, 2026

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
A Law Corporation

By: ______________________________
MILLICENT N. SANCHEZ
LORI M. YANKELEVITS
Attorneys for Defendant, Badger Meter, Inc.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

# PROOF OF SERVICE

**Ronald Wayne Toten v. Hadronex, Inc. et al.**
**Case No. 26STCV20825**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 10877 Wilshire Blvd., Suite 1650, Los Angeles, CA 90024.

On August 19, 2026, I served true copies of the following document(s) described as **DEFENDANT BADGER METER, INC.'S ANSWER TO COMPLAINT** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Swerdlow Florence Sanchez Swerdlow & Wimmer's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on August 19, 2026, at Los Angeles, California.



Chehreh Golzar

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**SERVICE LIST**
**Ronald Wayne Toten v. Hadronex, Inc. et al.**
**Case No. 26STCV20825**

Peter A Javanmardi, Esq.
Marc A. Holmquist, Esq.
Miranda A. Mossavar, Esq.
Javanmardi Law | Holmquist Law, PC
1875 Century Park East
Suite 2250
Los Angeles, CA 90067
Telephone: (424) 286-4240
Facsimile: (310) 564-0347
peter@javanmardilaw.com
marc@javanmardilaw.com
miranda@javanmardilaw.com

*Attorneys for Plaintiff Ronald Wayne Toten*