MILLICENT N. SANCHEZ (State Bar No. 108613)
Email: msanchez@swerdlowlaw.com
LORI M. YANKELEVITS (State Bar No. 156253)
Email: lyankelevits@swerdlowlaw.com
**SWERDLOW FLORENCE**
**SANCHEZ SWERDLOW & WIMMER**
A Law Corporation
10877 Wilshire Blvd., Suite 1650
Los Angeles, California 90024
Telephone: (310) 288-3980
Facsimile: (310) 733-1727

Attorneys for Defendant, Badger Meter, Inc.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

RONALD WAYNE TOTEN,

Plaintiff,

vs.

HADRONEX, INC. d/b/a SMARTCOVER SYSTEMS; BADGER METER, INC.; and DOES 1 through 10, Inclusive,

Defendants.

Case No. 2:26-cv-09280-SRM-DMK

*Assigned to Hon. Serena R. Murillo*

**DEFENDANT BADGER METER, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION**

*Filed concurrently with Declarations of Lori M. Yankelevits, Esq., David Miller, Sheryl Hopkins and Laurie A. Petersen, Esq. in support of Badger Meter's Motion to Compel Arbitration and to Dismiss or Stay the Action.*

Date: November 25, 2026
Time: 1:30 p.m.
Courtroom: 5D

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 25, 2026 at 1:30 p.m. in Courtroom 5D of the United States District Court, Central District of California, Western Division located at 350 West 1st Street, Room 5D, Los Angeles, CA 90012, Defendant Badger Meter, Inc. ("Badger Meter") for itself and as successor to Hadronex, Inc. d/b/a SmartCover Systems ("Hadronex"), will and hereby does move this Court for an order: (1) compelling Plaintiff Ronald Wayne Toten's ("Plaintiff") claims to arbitration under the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. ("FAA"), in accordance with the terms of the arbitration agreement that he agreed to; and (2) dismissing this action under Federal Rules of Civil Procedure Rule 12(b)(1) and/or 12(b)(6), or, in the alternative, staying all civil court proceedings pending completion of arbitration pursuant to Section 3 of the FAA. See 9 U.S.C. § 3.

This Motion is made on the grounds that all of Plaintiff's claims are subject to final and binding arbitration pursuant to the agreement into which he entered during his employment with Defendant. Badger Meter thus moves to compel arbitration of Plaintiff's claims pursuant to Section 4 of the FAA. 9 U.S.C. § 4. Badger Meter further moves for dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint fails to state a claim upon which relief can be granted as a consequence of his arbitration agreement with Defendant. See, Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988). Defendant also moves for dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) as the Court lacks subject matter jurisdiction as a consequence of his arbitration agreement with Defendant. If the Court declines to dismiss the case, Badger Meter alternatively moves this Court for an order staying the matter, pursuant to 9 U.S.C. Section 3.

Badger Meter's Motion is based on this Notice, the Memorandum of Points and Authorities, the Declarations of Lori Yankelevits ("Yankelevits"), David Miller

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

("Miller"), Laurie Petersen ("Petersen"), and Sheryl Hopkins ("Hopkins") filed in support of Badger Meter's Motion, the papers and pleadings on file in this case, and all other evidence and argument as may be presented at the hearing on the Motion.

DATED: September 3, 2026

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
A Law Corporation

By: /s/ Lori M. Yankelevits
MILLICENT N. SANCHEZ
LORI M. YANKELEVITS
Attorneys for Defendant, Badger Meter, Inc.

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

TABLE OF CONTENTS

Page No.

I. INTRODUCTION ..... 1

II. STATEMENT OF RELEVANT FACTS ..... 2

III. LEGAL STANDARDS ..... 4

IV. LEGAL ARGUMENT ..... 5

A. The FAA Governs the Parties' Agreement to Arbitrate. ..... 5

B. The FAA Mandates That This Court Enforce The Parties' Arbitration Agreement. ..... 7

C. The Arbitration Agreement Requires The Arbitrator To Determine Arbitrability. ..... 7

D. Notwithstanding The Clear And Unmistakable Delegation To The Arbitrator, The Arbitration Agreement Satisfies The Gateway Issues For The Court. ..... 9

1. The Parties Expressly Entered Into An Agreement To Arbitrate. ..... 9

2. Plaintiff's Claims Clearly Are Within The Scope Of The Arbitration Agreement. ..... 11

E. The Arbitration Agreement Satisfies The Requirements of Armendariz. ..... 11

1. The Arbitration Agreement Provides For A Neutral Arbitrator. ..... 12

2. The Arbitration Agreement Provides For Adequate Discovery. ..... 13

3. The Agreement Provides For A Written, Reasoned Opinion. ..... 13

4. The Agreement Has No Damages Limitation. ..... 14

5. The Agreement Does Not Require Plaintiff To Pay Any Of The Costs Unique To Arbitration. ..... 14

F. The Agreement Contains A Severability Clause. ..... 15

G. The Court Should Dismiss This Case, Or, In The Alternative, Stay The Action. ..... 15

V. CONCLUSION ..... 16

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265 (1995) .......... 5, 6

Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009) .......... 9

AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011) .......... 7

Cancer Ctr. Assocs. for Research & Excellence, Inc. v. Philadelphia Ins. Companies, No. 1:15-cv-00084-LJO, 2015 WL 1766938 (E.D. Cal. Apr. 17, 2015) .......... 4

Chappel v. Lab. Corp. of Am., 232 F.3d 719 (9th Cir. 2000) .......... 4, 15

Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) .......... 6

Comer v. Micor, Inc., 436 F.3d 1098 (9th Cir. 2006) .......... 9

Daisley v. Blizzard Music Ltd. (US), No. 217CV01500CASAS, 2017 WL 1628399 (C.D. Cal. May 1, 2017) .......... 16

Daniel v. Paul, 395 U.S. 298 (1969) .......... 6

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995) .......... 7

Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79 (2000) .......... 7

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002) .......... 9, 11

Katzenbach v. McClung, 379 U.S. 294 (1964) .......... 6

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185 (9th Cir. 1986) .......... 9

Luna v. Kemira Specialty, Inc., 575 F. Supp. 2d 1166 (C.D. Cal. 2008) .......... 5

Mohamed v. Uber Techs., Inc., 848 F.3d 1201 (9th Cir. 2016) .......... 8

Momot v. Mastro, 652 F.3d 982 (9th Cir. 2011) .......... 8

Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983), superseded by statute on other grounds, .......... 7, 11

Perry v. Thomas, 482 U.S. 483 (1987) .......... 5

Pokorny v. Quixtar, Inc., 601 F.3d 987 (9th Cir. 2010) .......... 15

Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010) .......... 7

Thinket Ink Info. Res., Inc. v. SunMicrosystems, Inc., 368 F.3d 1053 (9th Cir. 2004) .......... 4, 15

**California Cases**

Aanderud v. Superior Court, 13 Cal. App. 5th 880 (2017) .......... 8

Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal. 4th 83 (2000) .......... 1, 11, 12, 13, 14, 15

Crippen v. Central Valley RV Outlet, Inc., 124 Cal. App. 4th 1159 (2004) .......... 11

Giuliano v. Inland Empire Personnel, Inc., 149 Cal. App. 4th 1276 (2007) .......... 5

Jenks v. DLA Piper Rudnick Gray Cary US LLP, 243 Cal. App. 4th 1 (2015) .......... 9

Pinela v. Neiman Marcus Group, Inc., 238 Cal. App. 4th 227 (2015) .......... 7

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

**Federal Statutes**

Federal Arbitration Act, 9 U.S.C Sec 1 et seq. .................................... 1, 2, 4, 5, 6, 7, 16, 17

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ................................ 2, 4, 5, 15, 16

Federal Rules of Civil Procedure Rule 7(a)......................................................................... 8

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

# MEMORANDUM AND POINTS OF AUTHORITIES

## I. INTRODUCTION

Plaintiff, Ronald Wayne Toten, is a former employee of Defendant, Badger Meter, Inc. ("Defendant," "Badger Meter," or the "Company") and also of Defendant, Hadronex, Inc. ("Hadronex"), which was the predecessor to Badger Meter. Plaintiff's employment ended on July 25, 2025. While employed by Hadronex, on August 27, 2024, Plaintiff signed an Arbitration Agreement between himself and Hadronex, and G&A Partners ("PEO" or "G&A Partners"), the Professional Employer Organization ("PEO") Hadronex retained to provide outsourced payroll, benefits, and other human resources services for Hadronex and its employees (the "Arbitration Agreement"). Declaration of Sheryl Hopkins ("Hopkins Decl.") ¶ 5. The Arbitration Agreement requires the parties to "utilize binding arbitration as the sole and exclusive means to resolve all covered disputes that may arise by and between Employee and the Company . . . including but not limited to disputes regarding . . . the employment relationship, termination of employment, and compensation." However, despite having signed the Arbitration Agreement, Plaintiff filed the instant lawsuit against Badger Meter and Hadronex alleging various causes of action related to his employment and termination therefrom.

As explained more fully below, under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"), the parties' agreement to resolve claims by final and binding arbitration must be enforced. The Arbitration Agreement is enforceable under both the Federal Arbitration Act (FAA) and the California Arbitration Act (CAA). The agreement satisfies the requirements of a valid arbitration agreement under state law, including—to the extent they apply—the requirements set forth in Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83 (2000), and the Arbitration Agreement is neither procedurally nor substantively unconscionable. In sum, the Parties' Arbitration Agreement is fully valid and enforceable under well-established

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

federal and state public policies favoring arbitration. Accordingly, Badger Meter respectfully requests that this Court enforce the parties' Arbitration Agreement and compel Plaintiff to pursue his claims through binding arbitration pursuant to the FAA. 9 U.S.C. § 1, et seq. Additionally, Badger Meter requests that this Court dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, stay this litigation pending completion of the arbitration pursuant to Section 3 of the FAA. See 9 U.S.C. § 3.

## II. STATEMENT OF RELEVANT FACTS

Hadronex, and then Badger Meter, employed Plaintiff from on or about August 27, 2024, until on or about July 25, 2025. Hopkins Decl. ¶ 4. During the course of his employment, Plaintiff signed an Arbitration Agreement and agreed to "utilize binding arbitration as the sole and exclusive means to resolve all covered disputes that may arise by and between Employee and the Company . . . including but not limited to disputes regarding . . . the employment relationship, termination of employment, and compensation." Id. ¶ 6, Ex. A. The Arbitration Agreement explicitly applies to any employment-related claims between Plaintiff and Hadronex and to the "parents, subsidiaries, affiliates, owners, directors, officers, managers, employees or agents" of Hadronex. The Arbitration Agreement also provides that Hadronex' "respective owners, affiliates, future affiliates, directors, officers, members, managers, employees, or agents are third-party beneficiaries of this Agreement and may enforce this Agreement." Id. The Arbitration Agreement further provides that "The arbitrator and not any federal, state, or local court or agency will have exclusive authority to resolve any dispute relating to the scope, applicability, validity, enforceability or waiver of this Agreement." Id. The Arbitration Agreement contains a severability clause stating: "[i]f any provision of this Agreement is deemed void, voidable or otherwise unenforceable, in whole or in part, such provision will be severed from this Agreement. All remaining provisions will remain in full force and effect." Id.

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

On August 27, 2024, Plaintiff acknowledged receipt of the Arbitration Agreement and agreed to arbitrate claims covered by the Arbitration Agreement by electronically signing the agreement. Id.

As of January 31, 2025, during Plaintiff's employment, Badger Meter acquired all of the stock of Hadronex, became the owner of Hadronex, and merged Hadronex into Badger Meter. Declaration of David Miller ("Miller Decl.") ¶¶ 4-5. Badger Meter is the sole surviving entity resulting from the merger between Hadronex and Badger Meter and is the successor to Hadronex. Id. ¶ 5, Ex. A. See also Complaint (Document 1-1, pp 6-33) ¶ 3 ("Defendant Badger acquired Hadronex, Inc., and/or its business, and at relevant times was Plaintiff's employer, joint employer and/or the successor in interest to Hadronex, Inc.").

In April 2026 and then again in May 2026, prior to Plaintiff's filing of his Complaint, in response to Plaintiff's request for records, Badger Meter's counsel provided Plaintiff's counsel with a copy of Plaintiff's personnel file through a shared file link, which file contained the Arbitration Agreement See Declaration of Laurie Petersen ("Petersen Decl.") ¶¶ 2-3. On May 26, 2026, Badger Meter's counsel specifically alerted Plaintiff's counsel that Plaintiff signed the Arbitration Agreement. Id. ¶ 6, Ex. C.

Nevertheless, on June 30, 2026, Plaintiff filed his Complaint against Hadronex and Badger Meter in the Superior Court of California, County of Los Angeles, asserting the following causes of action: (1) FEHA employment discrimination; (2) FEHA harassment ; (3) FEHA retaliation; (4) FEHA failure to accommodate; (5) FEHA failure to engage in timely and good-faith interactive process; (6) FEHA failure to prevent/remedy discrimination, harassment, or retaliation; (7) wrongful discharge in violation of public policy; (8) intentional infliction of emotional distress; (9) defamation; (10) breach of contract; (11) breach of express oral and implied-in-fact contract not to terminate without good cause; (12) breach of implied covenant of good faith and fair dealing;

SANCHEZ SWERDLOW SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

After Plaintiff served his Complaint on Badger Meter on July 22, 2026, defense counsel e-mailed Plaintiff's counsel on July 23, 2026, again providing a copy of the Arbitration Agreement and asking if Plaintiff would agree to arbitrate his claims. Petersen Decl. ¶ 7, Ex. D. On July 29, 2026, after not receiving any response from Plaintiff's counsel, Defendant's counsel sent an e-mail asking for a response to her July 23 email and offering to discuss arbitration with Plaintiff's counsel. Id. ¶ 8, Ex. E. Plaintiff's counsel responded that same day, stating Plaintiff's refusal to agree to arbitrate and stated "If Defendants are adamant on arbitration then please just get the motion on file so we can get the case moving." Id. ¶ 9, Ex. F. Defendant's counsel attempted to further confer with Plaintiff's counsel on the issue through additional e-mail communications, yet Plaintiff's counsel refused to agree to arbitrate. See Id. ¶¶ 10-13, Exs. G-I. On August 19 and 20, 2026, Defendant's counsel e-mailed Plaintiff's counsel acknowledging their email communication regarding arbitration, and requesting a time to meet and confer by telephone or video. Id. ¶¶ 14-15, Exs. J & K. Defendant's counsel also left a voicemail message for Plaintiff's counsel reiterating the desire to meet and confer regarding arbitration. Id. ¶ 16. To date, Defendant's counsel has not heard any response from Plaintiff's counsel, id. ¶ 17, and, consequently, Badger Meter had no choice but to file this Motion to Compel Arbitration.

## III. LEGAL STANDARDS

Badger Meter seeks an Order compelling arbitration and the dismissal or stay of this action pending arbitration pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and the FAA. Substantial case law establishes that these are the rules under which to seek dismissal based on an arbitration provision. See, e.g., Thinket Ink Info. Res., Inc. v. SunMicrosystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004) (affirming dismissal of plaintiffs' claims subject to arbitration provision pursuant to Rule 12(b)(6)); Chappel v. Lab. Corp. of Am., 232 F.3d 719, 725 (9th Cir. 2000) (same); Cancer Ctr. Assocs. for Research & Excellence, Inc. v.

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

Philadelphia Ins. Companies, No. 1:15-cv-00084-LJO, 2015 WL 1766938, at *2 (E.D. Cal. Apr. 17, 2015) ("[C]ourts have held that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision." (quotation marks omitted)); Luna v. Kemira Specialty, Inc., 575 F. Supp. 2d 1166, 1176 (C.D. Cal. 2008) ("[E]ven where a party moves to stay litigation pending arbitration under the Federal Arbitration Act, 9 U.S.C. § 3, the district court has discretion to dismiss the complaint if it finds all of the claims before it are arbitrable.")

## IV. LEGAL ARGUMENT

### A. The FAA Governs the Parties' Agreement to Arbitrate.

The Arbitration Agreement states it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA")." Hopkins Decl. ¶ 6, Ex. A. The Federal Arbitration Act applies to any "contract evidencing a transaction involving commerce" that contains an arbitration provision. 9 U.S.C. § 2. In the instant case, the FAA applies to the parties' Arbitration Agreement because it is a contract "evidencing a transaction involving commerce." Id. A "broad construction" must be given to the phrase "evidencing a transaction involving commerce." Giuliano v. Inland Empire Personnel, Inc., 149 Cal. App. 4th 1276, 1287 (2007) citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 277 (1995). Because the FAA provides for "the enforcement of arbitration agreements within the full reach of the Commerce Clause," Perry v. Thomas, 482 U.S. 483, 490 (1987), courts have made it clear that the FAA encompasses a wider range of transactions than those actually "in commerce" or "within the flow of interstate commerce," but instead, covers contracts that merely "affect" interstate commerce. Allied- Bruce Terminix Cos., 513 U.S. at 273-74. The threshold under this standard is quite low, as courts look to the parties' contract and business operations in determining whether the contract falls within the scope of the FAA.

Badger Meter need only establish that it conducts operations in the stream of

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

commerce— regardless of whether Plaintiff himself was directly involved in such interstate operations. See, e.g., id. at 282 (the FAA governed the arbitration clause in residential termite protection plan, even though all services provided were intra-state; "In addition to the multistate nature of Terminix and Allied-Bruce, the termite-treating and house-repairing material used by Allied-Bruce in its (allegedly inadequate) efforts to carry out the terms of the Plan, came from outside Alabama"); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109-18 (2001) (sales employee's arbitration agreement with employer engaged in nationwide retail business falls within scope of the FAA); Daniel v. Paul, 395 U.S. 298, 304-305 (1969) (judicially noticing that snack bar's activities involve interstate commerce, in part, because it advertised to out-of-state patrons and ingredients in the food served had moved in interstate commerce); Katzenbach v. McClung, 379 U.S. 294 (1964) (restaurant's business involved interstate commerce because it used food products and supplies traveling in interstate commerce).

Badger Meter regularly is engaged in interstate commerce. Badger Meter is an innovator in flow measurement, water quality and control products, serving water utilities, municipalities, and commercial and industrial customers worldwide. Miller Decl. ¶ 5. Plaintiff was employed at Hadronex's, and then Badger Meter's, facility in Escondido, California until his termination on July 25, 2026. Hopkins Decl. ¶ 4. Plaintiff alleges he had responsibilities for operations in Melbourne, Florida, Escondido, California, and in Texas. Complaint (Document 1-1, pp 6-33) ¶ 20. He further alleges that he travelled to Badger Meter's headquarters, id. ¶ 28, which are in in Milwaukee, Wisconsin. Miller Decl. ¶ 6. In addition to its corporate headquarters in Milwaukee, Wisconsin, Badger Meter has facilities in various locations throughout the U.S. and international locations in Latin America and Europe. Id. It is indisputable that Badger Meter's business involves interstate commerce and is therefore governed by the FAA.

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

B. The FAA Mandates That This Court Enforce The Parties' Arbitration Agreement.

The FAA reflects a "liberal federal policy favoring arbitration." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011), citing Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24 (1983), superseded by statute on other grounds. Section 2 of the FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable," absent grounds that exist for the revocation of any contract. 9 U.S.C. § 2. The FAA was enacted "in response to widespread judicial hostility to arbitration agreements" and reflects "the fundamental principle that arbitration is a matter of contract." Concepcion, 563 U.S. at 339. The principal purpose of the FAA is thus to "ensur[e] that private arbitration agreements are enforced according to their terms." Id. at 344.

The party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000). Because of the strong policy favoring arbitration, doubts or ambiguities must be resolved in favor of arbitration. See Moses H. Cone Mem. Hosp., 460 U.S. at 24-25.

C. The Arbitration Agreement Requires The Arbitrator To Determine Arbitrability.

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68-69 (2010). Similarly, "'[p]arties to an arbitration agreement may agree to delegate to the arbitrator, instead of a court, questions regarding the enforceability of the agreement.'" Pinela v. Neiman Marcus Group, Inc., 238 Cal. App. 4th 227, 239 (2015). "[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995). While it is generally presumed the judge will

SANCHEZ SWERDLOW SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

decide arbitrability, that presumption disappears where there is clear and unmistakable evidence that the parties intended the arbitrator to decide arbitrability. Aanderud v. Superior Court, 13 Cal. App. 5th 880, 891 (2017) (citations omitted).

The Arbitration Agreement executed by Plaintiff contains an express delegation clause deferring issues of arbitrability to the arbitrator. The Arbitration Agreement provides:

> The arbitrator—and not any federal, state, or local court or agency—will have exclusive authority to resolve any dispute relating to the scope, applicability, validity, enforceability, or waiver of this Agreement.

Hopkins Decl. ¶ 6, Ex. A.

Furthermore, the AAA Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." See Yankelevits Decl. ¶ 3, Ex. A, Rule 7(a). The Ninth Circuit and the California courts have held that a delegation clause meets the "clear and unmistakable" standard if it expressly gives the arbitrator authority to determine "the validity or application of any of the provisions" of the arbitration clause, Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011), or to resolve disputes relating to the "enforceability, revocability or validity of the [arbitration agreement] or any portion of [it]," Mohamed v. Uber Techs., Inc., 848 F.3d 1201, 1209 (9th Cir. 2016).

There is no dispute that the Arbitration Agreement uses equivalent language. Accordingly, the Court should compel Plaintiff to arbitrate his claims and defer any further issues relating to arbitrability to the arbitrator in accordance with the express terms of the Arbitration Agreement.

SANCHEZ SWERDLOW SWERDLOW FLORENCE & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

D. Notwithstanding The Clear And Unmistakable Delegation To The Arbitrator, The Arbitration Agreement Satisfies The Gateway Issues For The Court.

Plaintiff must be compelled to submit the instant action to arbitration because Plaintiff executed a valid arbitration agreement encompassing the disputes at issue. In Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-84 (2002), the United States Supreme Court identified two "gateway" issues that courts may decide pertaining to arbitration and, specifically, the question of arbitrability: (1) "whether the parties are bound by a given arbitration clause" and (2) "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." All other issues are for the arbitrator to decide. Id. Both of the "gateway" issues compel arbitration in the instant case.

1. The Parties Expressly Entered Into An Agreement To Arbitrate.

Here, there is no doubt that an agreement to arbitrate exists between Plaintiff and Badger Meter.[1] While employed by Hadronex, Plaintiff signed the clearly labeled "Arbitration Agreement" on August 27, 2024. The Arbitration Agreement

[1] To the extent that Plaintiff argues that only Hadronex, but not Badger Meter, can enforce the Arbitration Agreement as against Plaintiff, it is well established that where an entity succeeds a signatory to an arbitration agreement following a merger, see Miller Decl. ¶ 4, Ex. A, the succeeding entity (Badger Meter, in this case), shall have all the rights of the signatory (Hadronex). See Jenks v. DLA Piper Rudnick Gray Cary US LLP, 243 Cal. App. 4th 1 (2015) (successor law firm created through merger could enforce arbitration agreement employee signed with predecessor firm); Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631-32 (2009) (explaining that state-law doctrines of successor-related principles permit nonsignatory successors to enforce arbitration agreements signed by predecessors); Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986) (same); Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006) (same). Moreover, the Arbitration Agreement specifically states that Hadronex's "parents, owners, affiliates, [and] future affiliates . . .are third-party beneficiaries and may enforce this Agreement." Hopkins Decl. Exh, A.

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

states unequivocally that the parties agree to "utilize binding arbitration as the sole and exclusive means to resolve all covered disputes that may arise by and between Employee and the Company . . . including but not limited to disputes regarding . . . the employment relationship, termination of employment, and compensation." See Hopkins Decl. Ex. A. Plaintiff acknowledged receipt of the Arbitration Agreement and agreed to arbitrate claims covered by the Arbitration Agreement by affixing his electronic signature, which the Arbitration Agreement specifically authorizes:

> "AGREED AND RECEIVED BY EMPLOYEE: BY EITHER SIGNING THIS AGREEMENT BY HAND (IF THIS IS A PAPER COPY) OR THROUGH AN "ELECTRONIC SIGNATURE" BELOW OR ON A SEPARATE SCREEN (IF EMPLOYEE IS REVIEWING THIS AGREEMENT ELECTRONICALLY/VIA COMPUTER), EMPLOYEE IS AGREEING TO ARBITRATE CLAIMS COVERED BY THIS AGREEMENT. EMPLOYEE ALSO AGREES AND AUTHORIZES THE USE OF AN ELECTRONIC SIGNATURE AS EMPLOYEE'S ACCEPTANCE TO THIS AGREEMENT AND UNDERSTANDS AND ACKNOWLEDGES THAT EMPLOYEE'S ELECTRONIC SIGNATURE IS INTENDED TO SHOW EMPLOYEE'S ACCEPTANCE AND IS AS VALID AND HAS THE SAME LEGAL EFFECT AS AN INK SIGNATURE. DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE ACKNOWLEDGMENT AND AGREEMENT."

Id.

Because Plaintiff is the party to the Arbitration Agreement who is unwilling

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

to submit this matter to arbitration, he bears the full burden of proving that the Arbitration Agreement is not enforceable. Crippen v. Central Valley RV Outlet, Inc., 124 Cal. App. 4th 1159, 1164-1165 (2004). Any doubt as to the Arbitration Agreement's enforceability must be resolved against Plaintiff, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem. Hosp., 460 U.S. at 24-25. The Arbitration Agreement encompasses Plaintiff's instant claims.

2. Plaintiff's Claims Clearly Are Within The Scope Of The Arbitration Agreement.

In the Arbitration Agreement, Plaintiff agreed to "utilize binding arbitration as the sole and exclusive means to resolve all covered disputes that may arise by and between Employee and the Company . . . including but not limited to disputes regarding . . . the employment relationship, termination of employment, and compensation." See Hopkins Decl. ¶ 6, Ex. A. The employment-law claims in Plaintiff's Complaint – which include claims for discrimination, harassment, retaliation, failure to prevent discrimination/retaliation, failure to engage in timely and good-faith interactive process, wrongful discharge, intentional infliction of emotional distress, defamation, breach of contract, breach of express oral and implied-in-fact contract not to terminate without good cause, breach of implied covenant of good faith and fair dealing – all arise out of his employment relationship or termination from employment and are squarely within the description of claims covered by the Arbitration Agreement.

Because Defendant has satisfied the second gateway issues, any other issues that Plaintiff may identify are expressly for the arbitrator to decide. Howsam, 537 U.S. at 83-84.

E. The Arbitration Agreement Satisfies The Requirements of Armendariz.

The Arbitration Agreement also is fully enforceable under the standards articulated by the California Supreme Court in Armendariz v. Foundation Health

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

Psychcare Services, Inc., 24 Cal. 4th 83, 114 (2000). In that case, the Court held that, to ensure an employee has access to a forum where he or she may effectively vindicate his or her rights, an employment arbitration agreement must: (1) provide for neutrality of the arbitrator; (2) provide for "more than minimal discovery;" (3) require a written award that facilitates limited judicial review; (4) provide for all remedies to which the employee would be entitled in a court of law; and (5) not require that the employee pay fees or costs that are unique to arbitration. Armendariz, 24 Cal. 4th at 102-113. The Arbitration Agreement at issue here meets all five of the requirements set forth in Armendariz for ensuring that the arbitral forum provides for effective vindication of Plaintiff's rights.

1. The Arbitration Agreement Provides For A Neutral Arbitrator.

First, the Arbitration Agreement provides for a neutral arbitrator because it expressly states that unless otherwise agreed to by the parties, the arbitration will be held under the auspices of the American Arbitration Association ("AAA"), and except as provided in this Agreement or otherwise agreed to, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") (the AAA Rules are available via the internet at www.adr.org/employment). See Hopkins Decl., Ex. A. The Agreement further provides:

> "Unless the parties jointly agree otherwise, the arbitrator will be an attorney experienced in employment law and licensed to practice law in the state in which the arbitration is convened or a retired judge from any jurisdiction. Unless the parties jointly agree otherwise, the arbitration will take place in or near the city and in the state in which Employee works or last worked for the Company."

Id. The Arbitration Agreement further provides for a coin toss and strike list procedure, should the parties not be able to mutually agree on an arbitrator. Id. Thus, the Arbitration Agreement ensures the selection of a neutral arbitrator.

SANCHEZ SWERDLOW SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

2. <u>The Arbitration Agreement Provides For Adequate Discovery.</u>

Second, the Agreement provides for more than minimal discovery, as required in <u>Armendariz</u>. The AAA Rules require the parties to exchange documents and other information, and the arbitrator manages any exchange of information, whether through "depositions, interrogatories, document production, or other means." Declaration of Lori Yankelevits ("Yankelevits Decl.") ¶ 3, Ex. A, Rule-21(a)). The Arbitration Agreement also provides:

> "Each party may take the deposition of two individual fact witnesses and any expert witness designated by another party. Each party may also propound requests production of documents and ten (10) interrogatories, and each party may subpoena witnesses and documents for discovery or the arbitration hearing, including testimony and documents relevant to the case from third parties, in accordance with any applicable state or federal law. Additional discovery may be conducted by mutual stipulation, and the arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on the arbitrator's determination whether additional discovery is warranted by the circumstances of a particular case."

Hopkins Decl.¶ 6, Ex. A.

3. <u>The Agreement Provides For A Written, Reasoned Opinion.</u>

Third, the Arbitration Agreement provides that the "arbitrator shall render an award by written opinion that will include the factual and legal basis for the decision no later than thirty (30) days from the date the arbitration hearing concludes, or the post-hearing briefs (if requested) are received, whichever is later, unless the parties agree otherwise. The decision of the arbitrator may be entered and enforced as a

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

final judgment in any court of competent jurisdiction." Hopkins Decl. ¶ 6, Ex. A. Further, AAA Rule R-45 states that "[a]ny award shall be in writing," "shall be executed in the form and manner required by law" and the "award shall provide the written reasons for the decision unless the parties agree otherwise." See Yankelevits Decl.¶ 3, Ex. A.

4. The Agreement Has No Damages Limitation.

Fourth, the Arbitration Agreement provides that the "arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies are limited to those that would be available to a party in its/his or her individual capacity in a court of law for the disputes presented to and decided by the arbitrator. The arbitrator shall apply the substantive federal, state, or local law applicable to the claims asserted. The Federal Rules of Evidence apply" Hopkins Decl.¶ 6, Ex. A. Therefore, the Arbitration Agreement provides for all relief that is available to Plaintiff in court and his remedies are not limited in any way if the dispute is arbitrated. To that end, the fourth Armendariz requirement is satisfied.

5. The Agreement Does Not Require Plaintiff To Pay Any Of The Costs Unique To Arbitration.

Lastly, the Agreement comports with the last Armendariz requirement, which is that Plaintiff must not be required to pay any costs unique to arbitration. The Agreement provides the parties

> "shall follow the AAA Rules applicable to initial filing fees, but in no event will Employee be responsible for any portion of those fees in excess of the filing or initial appearance fees applicable to court actions in the jurisdiction where the arbitration will be conducted. G&A Partners (and/or the Company, as applicable) shall pay any remaining portion of the initial fee and will pay all costs and expenses unique to arbitration, including without

SANCHEZ SWERDLOW SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

limitation the arbitrator's fees. Each party will pay for its own costs and attorneys' fees, if any, except that the arbitrator may award reasonable fees to the prevailing party as provided by law. The arbitrator will resolve any disputes regarding costs/fees associated with arbitration."

Hopkins Decl.¶ 6, Ex. A. Accordingly, the Agreement is fully enforceable and complies with each Armendariz requirement.

F. The Agreement Contains A Severability Clause.

To the extent Plaintiff argues that any provision of the Agreement is unconscionable under California or Federal law, the Agreement contains a severability clause. The Agreement provides "if any provision of this Agreement is deemed to be void, voidable or otherwise unenforceable, in whole or in part, such provision will be severed from this Agreement. All remaining provisions will remain in full force and effect." Hopkins Decl.¶ 6, Ex. A. Therefore, the Court is empowered to sever any unconscionable provisions. See Pokorny v. Quixtar, Inc., 601 F.3d 987, 1005 (9th Cir. 2010).

G. The Court Should Dismiss This Case, Or, In The Alternative, Stay The Action.

Upon ordering this case to arbitration, dismissal, rather than a stay, is the more appropriate remedy in this case. The Ninth Circuit holds that where, as here, all the claims in the dispute are subject to arbitration, dismissal is the appropriate remedy. See, e.g., Thinket Ink, 368 F.3d at 1060 (holding that district court did not err "in dismissing the plaintiffs' claims that were subject to arbitration pursuant to Fed. R. Civ. P. 12(b)(6)"); Chappel, 232 F.3d at 725 (where "judicial review ... is barred by the [contract's] valid and enforceable arbitration clause[,][t]he district court properly dismissed [plaintiff's] complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim"). Indeed, district courts in the Ninth Circuit routinely dismiss when all claims are subject to arbitration. See, e.g.,

SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
SWERDLOW FLORENCE
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727

Sherwood, 2018 WL 3970083, at *6 (S.D. Cal. Aug. 20, 2018) (dismissing plaintiff's claims with prejudice because it was equitably estopped from avoiding enforcement of a mandatory arbitration provisions); Daisley v. Blizzard Music Ltd. (US), No. 217CV01500CASAS, 2017 WL 1628399, *8 (C.D. Cal. May 1, 2017) ("district courts in the Ninth Circuit routinely dismiss when all claims are subject to arbitration"). Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice.

In the alternative, the Court should stay this action. Pursuant to the FAA, Plaintiff's claims against Defendant are subject to final and binding arbitration. Thus, if the action is not dismissed, this entire action should be stayed pending the completion of the arbitration pursuant to Section 3 of the FAA, which states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Thus, at minimum, a stay of this action pending completion of arbitration is appropriate.

V. CONCLUSION

For the foregoing reasons, Badger Meter respectfully requests that this Court compel Plaintiff's claims to arbitration pursuant to the rules of the American Arbitration Association and dismiss this action under Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6) or, in the alternative, stay this proceeding pending completion of arbitration pursuant to 9 U.S.C. Section 3.

DATED: September 3, 2026

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER
A Law Corporation

By: /s/ Lori M. Yankelevits
MILLICENT N. SANCHEZ
LORI M. YANKELEVITS
Attorneys for Defendant, Badger Meter, Inc.

SWERDLOW FLORENCE
SANCHEZ SWERDLOW & WIMMER, A LAW CORPORATION
10877 WILSHIRE BLVD., SUITE 1650
LOS ANGELES, CALIFORNIA 90024
TEL (310) 288-3980 • FAX (310) 733-1727